[No. 10742.   Department Two.   May 10, 1913.]

E. J. SIMONS, *Respondent*, v. HALLIDIE COMPANY *et al.*,
*Appellants.*[1]

COMPROMISE AND SETTLEMENT—RECEIPT—IMPEACHMENT—EVIDENCE
—SUFFICIENCY.   A receipt in full of all demands, passed upon a pay-
ment made when the parties had come together for the purpose of
arriving at a complete settlement of their affairs, is not sufficiently
overcome by parol evidence, where there was nothing to show fraud,
overreaching, mistake or other like facts to destroy the effect of
the language used, there was direct conflict in the testimony, and
the position of the party having the burden of proof was improbable.

Appeal from a judgment of the superior court for Spokane
county, Hinkle, J., entered May 21, 1912, upon findings in
favor of the plaintiff, after a trial on the merits before the
court without a jury, in an action for an accounting.   Re-
versed.

*Graves, Kizer & Graves*, for appellants.
*Geo. E. Canfield*, for respondent.

MORRIS, J.—Action by respondent, a former stockholder
of the appellant corporation, to recover profits claimed to
have been earned while he was such stockholder.   The facts
are these:   In March, 1910, appellant and respondent en-
tered into an agreement, whereby respondent entered the
service of appellant as a machinery salesman at a salary of
$150 a month, purchasing at the same time 20 shares of its
stock at its par value of $2,000.   This agreement contained
the following provision relating to the stock, in the event of
respondent ceasing to become a stockholder:

"The Hallidie Company has the right at any time to dis-
charge E. J. Simons should his services become unsatisfac-
tory,—but in the event of their discharging E. J. Simons,
they hereby agree by B. B. Truett, president, to purchase
E. J. Simons' stock for the same price that he paid for same,

[1]Reported in 131 Pac. 1169.

and in the event of his withdrawing from the firm his proportion of the profits to the date of his withdrawal are to be paid him in cash."

Respondent remained with the company about a year, when he became dissatisfied because of their refusal to promote his brother from the position of shipping clerk to that of salesman, and spoke to Mr. Truett, the president of the company, about withdrawing from its employ. It then being the busy season for the machinery business, the company was very desirous of retaining respondent's services, and after some negotiations between Truett and respondent, Truett, as an inducement to respondent to continue in the service of the company, offered to increase his salary to $250 a month, repurchase the stock at the price paid for it, and give respondent an additional $750, making an aggregate of $2,750, to be payable in three notes, due in 6, 12, and 18 months. Respondent still remained dissatisfied. Truett's offer seemingly did not appeal to him, as he refused to accept it, and on March 7th, 1911, respondent was discharged. An attempt was then made to arrive at an adjustment of the amount to be paid respondent, culminating in the repurchase of the stock for the sum of $2,000, for which sum respondent received the check of appellant, with two other small checks representing the balance due on salary and expense account, and respondent signed the following receipt:

"Received of Hallidie Company and B. B. Truett, the sum of two thousand thirty dollars in full of all demands of every kind and nature. E. J. Simons."

On the $30 check was also written these words:

"Salary in full to date, $30, balance in full of all demands to date."

Respondent testified that these words just quoted were not on the check when he received it, but from the nature of the testimony offered in support of that contention, we are inclined to the belief that they were. The next communica-

tion between the parties was on March 24th, when, through an attorney, respondent wrote appellant demanding his share of accrued profits, which he put at $1,200. The company refused to recognize any claim of respondent under its settlement with him, claiming that the entire matter had been adjusted; and respondent brought this action in which he recovered, and the company has appealed.

The cause was tried without a jury, and the lower court first decided in favor of appellant, holding, as we understand, that the evidence of respondent was not sufficient to overcome the receipt. A motion for a new trial was made, and upon further consideration, the court changed its mind and entered judgment for respondent. In awarding the respondent a judgment, the lower court took into consideration the business done by appellant while respondent was in its employ, determined a profit of $11,654.26 had been earned during that time, and then concluded that respondent was entitled to one-tenth of this profit because of his ownership of one-tenth of the stock. After reading the record, we believe the lower court was correct in its first conclusion. We can find nothing to indicate to us sufficient reason why the receipt should not be given effect. The whole matter, it is admitted, was discussed between Truett and respondent at the time the checks were given and the receipts signed. Truett says that they were then endeavoring to arrive at a complete settlement of the amount due respondent as salary, upon expense account, and for the repurchase of the stock, and that:

"I made him a new offer, a cash offer to wipe everything off the slate so that there would be no further argument, no further trouble, so that we could get a complete settlement, and I particularly called his attention to the fact that that settlement was to be in full of all demands of every kind, in full for his dividends if he had any such claims; in full for everything, and I told him particularly that he must not accept the settlement—that he would have to give us a receipt in full, and that he must not take it unless it was final, a complete settlement."

Respondent does not deny this, further than to say that Truett told him, when he inquired as to his share of the profits, that it would depend upon his future action whether he received any or not.

We are inclined to accept appellant's version of the purpose and meaning of the receipt. The burden of proof was upon respondent to overthrow this receipt and show some good reason why he should not be held to its language. He has not done so. Receipts are not conclusive. They may be contradicted by parol. Fraud, overreaching, mistake, misunderstanding, or other like facts, may be shown to destroy the effect of the language used in a receipt. We do not find any of these facts in this case. The relation between these parties was at that time somewhat strained. They had met together for the purpose of arriving at a complete settlement of their affairs. It was not intended to leave anything for future negotiations, and when respondent asserts that the receipt was intended to represent only the money then paid, and to leave the question of whether he was to receive an additional sum representing the earning power of his stock during the time he held it, his position does not appeal to us as natural or probable. There is much in this case that makes the following excerpt from the opinion in *Sherman v. Sweeny*, 29 Wash. 321, 69 Pac. 1117, applicable:

"If respondent understood the matter otherwise than as stated in the paper, she should have so announced before signing it. If she expected to make any demand inconsistent with the terms there stated, it was her duty to make it known before signing and delivering it, and accepting the money which was paid relying thereon."

Without saying more, we believe respondent has not made out a case in his attempt to overthrow the receipt, and that the lower court should have so held.

The judgment is reversed.

CROW, C. J., MAIN, FULLERTON, and ELLIS, JJ., concur.